UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA R. M., <br><br> Petitioner, <br><br> v. <br><br> CHRISTOPHER CHESTNUT, et al., <br><br> Respondents. | No. 1:25-cv-01912-TLN-CKD <br><br> **ORDER** |

On December 23, 2025, the Court granted Petitioner Martha R.M.'s ("Petitioner") Motion for a Temporary Restraining Order ("TRO") and ordered Respondents to show cause why this Court should not convert the TRO into a preliminary injunction. (ECF No. 9.) On December 30, 2025, Respondents[1] filed a response. (ECF No. 13.) For the reasons set forth below, the Court issues a preliminary injunction.

---

[1] In a footnote, Respondents seek to "strike and dismiss all unlawfully named officials under § 2241." (ECF No. 13 at 1 n.1.) The request, as made, is improper. If Respondents seek to dismiss other respondents from this action, they must do so in a properly noticed motion. *See Ortega v. Kaiser*, No. 25-CV-05259-JST, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025) ("[A] request for court order must be made by motion. As a result, a request for affirmative relief is not proper when raised for the first time in an opposition.").

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND[2]

Petitioner is a 51-year-old native and citizen of Mexico who has lived in the United States since February 14, 1998.  (ECF No. 6 ¶¶ 15, 20.)  She and her husband operate their own business, which employs dozens of people, and Petitioner has an approved employment authorization through March 11, 2029.  (ECF No. 6 ¶ 25; ECF No. 7-2 at 7.)  Petitioner has three children all of whom are United States citizens.  (ECF No. 6 ¶ 25.)  Petitioner also has seven siblings in the United States all of whom are either United States citizens or lawful permanent residents.  (*Id.* ¶ 25.)  Petitioner has no criminal history.  (*Id.* ¶ 26.)

Petitioner entered the United States without inspection more than twenty-five years ago and has not left the country since.  (*Id.* ¶ 20; ECF No. 7-1 at 7.)  On October 27, 2022, Petitioner and her husband filed applications for Adjustment of Status to become lawful permanent residents under 8 U.S.C. § 1255(i).  (ECF No. 7-1 at 7.)  On October 28, 2025, U.S. Citizenship and Immigration Services ("USCIS") issued notices to Petitioner and her husband scheduling them to appear for an interview for their applications for Adjustment of Status on December 2, 2025, at the USCIS San Francisco Field Office.  (*Id.* at 8; ECF No. 7-2 at 3.)  Petitioner, her husband, and their attorney attended the interview.  (ECF No. 7-1 at 8.)  At the end of the interview, Petitioner and her husband were arrested by Immigration and Custody Enforcement ("ICE") agents.  (*Id.*)  Their applications for Adjustment of Status remain pending.  (*Id.*)

At the time of their arrest or shortly thereafter, ICE agents prepared a warrant for Petitioner's arrest.  (ECF No. 7-2 at 8.)  The warrant indicated there was "probable cause" to believe Petitioner was removable from the United States based in part upon the "pendency of ongoing removal proceedings against" Petitioner.  (*Id.*)  Petitioner represents there were no removal proceedings pending at the time the warrant was executed.  (ECF No. 6 ¶ 23.)  Instead, Petitioner states the removal proceedings were not initiated until December 15, 2025 — thirteen days after Petitioner was detained.  (*Id.*)

On December 17, 2025, an immigration judge denied Petitioner bond in light of the

---

[2]   Respondents concur with the facts provided by Petitioner and set forth in this Court's prior order.  (ECF No. 13 at 2.)  These facts are reiterated almost verbatim here for clarity.

2

government's new interpretation of § 1225(b)(2)(A) and *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).  (ECF No. 7-2 at 10–11.)

Petitioner challenged the constitutionality of her detention at the California City Correctional Facility in California City, California.  (ECF No. 7.)  On December 23, 2025, this Court issued a TRO requiring Petitioner's immediate release and further enjoining and restraining Respondents from re-arresting or re-detaining Petitioner absent compliance with constitutional protections.  (ECF No. 9.)  The Court now determines whether the relief contained in the TRO should continue as a preliminary injunction.

## II.   STANDARD OF LAW

For a preliminary injunction, courts consider whether a petitioner has established: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor to issue the requested preliminary injunction.  *Id.* at 1134–35.

## III.   ANALYSIS

This Court has already found that Petitioner established a likelihood of success on each of the *Winter* elements sufficient to warrant relief as set forth in the TRO.  (ECF No. 9.)  Because the standard for issuing a TRO is "substantially identical" to the standard for issuing a preliminary injunction, *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7

(9th Cir. 2001), the Court incorporates its reasoning from the TRO and need not duplicate its analysis here.

Respondents argue this Court should not convert the TRO into a preliminary injunction because Petitioner is not subject to 8 U.S.C. § 1226, but instead subject to mandatory detention under 8 U.S.C. § 1225.[3]  (ECF No. 13 at 3–8.)  Further, Respondents argue Petitioner has not met her burden to establish likely irreparable harm and the balance of equities and public interest do not weigh in her favor.  (*Id.* at 8–9.)  Finally, Respondents argue the Court should hold its decision in abeyance pending the resolution of a similar matter before the Ninth Circuit.[4]  (*Id.*)  The Court addresses these arguments in turn.

As to Respondents first argument — that § 1225 applies to Petitioner rather than § 1226 –– the Court finds no reason to alter its prior conclusion.  Respondents rely primarily on the Supreme Court's decision in *Jennings v. Rodriguez*.  (ECF No. 13 at 4–5 (citing 583 U.S. 281, 300 (2018)).)  According to Respondents, *Jennings* supports their position that Petitioner is subject to mandatory detention under § 1225, because *Jennings* found that applicants for admission under § 1225(b)(2) were not entitled to a bond hearing.  (*Id.*)  However, Respondents' argument hinges on the assumption that Petitioner is an "applicant seeking admission" under § 1225.  As this Court noted previously, Petitioner is not.  Indeed, to find otherwise would result in this Court disregarding the context and broader statutory scheme of § 1225 and § 1226.  *See Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *6 (E.D. Cal. Sept. 23, 2025).  For example, as the Supreme Court explained in *Jennings* — the same case Respondents cite — § 1225 applies "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible."  583

---

[3]  Respondents also argue Petitioner's application for adjustment of status does not change their status.  (ECF No. 13 at 7–8.)  Because the Court finds no reason to deviate from its prior conclusion that Petitioner is subject to § 1226, the Court does not address this argument.

[4]  Respondents also argue Petitioner should not receive attorneys' fees under the Equal Access to Justice Act ("EAJA").  (ECF No. 13 at 9–10.)  The Court defers ruling on this issue.  If Petitioner's counsel intends to pursue a claim for attorneys' fees, Petitioner shall do so in a properly noticed motion.

4

U.S. at 287.  Section 1225 "authorizes the Government to detain certain aliens *seeking admission into the country*" while § 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings."  *Id.* at 289 (emphasis added); *see also Otilio B.F. v. Andrews*, No. 1:25-CV-01398-KES-EPG (HC), 2025 WL 3152480, at *7 (E.D. Cal. Nov. 11, 2025) (similarly relying on statutory distinctions).  Here, Petitioner was already within the country and therefore was subject to § 1226.

Respondents acknowledge that previously the United States Department of Homeland Security ("DHS") and the Department of Justice interpreted 8 U.S.C. § 1226(a) — not § 1225 — to apply to noncitizens present in the United States who were detained by immigration authorities and subject to removal.  (ECF No. 13 at 5 n.3.)  However, Respondents argue this prior interpretation had not been previously addressed in a precedential decision by the Board of Immigration Appeals ("BIA") and recently, the BIA held that noncitizens within the United States without admission are "applicants for admission" as defined under § 1225.  (ECF No. 13 (citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).)

Not only this Court, but courts across the country have overwhelmingly found this interpretation unlawful.  *See e.g.*, *Hortua v. Chestnut, et al.*, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025); *Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (estimating over 350 cases ruled DHS's July policy improper across 160 different judges sitting in about 50 different courts nationwide); *Mirley Adriana Bautista Pico, et al. v. Kristi Noem, et al.*, No. 25-CV-08002-JST, 2025 WL 3295382, at *2 (N.D. Cal. Nov. 26, 2025) (collecting cases); *Armando Modesto Estrada-Samayoa v. Orestes Cruz, et al.*, No. 1:25-CV-01565-EFB (HC), 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).  Respondents' arguments provide no reason to conclude otherwise here.  As such, the Court reiterates its finding that Petitioner is not an applicant "seeking admission" subject to mandatory detention under § 1225.  Petitioner is instead subject to § 1226(a) and is therefore entitled to the process that statute requires, including a bond hearing at a minimum.

Second, the Court finds no reason to alter its conclusion regarding irreparable harm or balance of the equities and public interest.  Respondents argue Petitioner has not technically

1   entered the United States and is only entitled to minimal rights and processes. (ECF No. 13 at 8.)
2   Here again, Respondents argument rests on the assumption that § 1225 applies and Petitioner was
3   subject to mandatory detention. As set forth above and in this Court's prior Order, § 1226 is
4   applicable to Petitioner and under § 1226, Petitioner was entitled to the process that statute
5   requires, which Petitioner was denied. Therefore, for the reasons set forth in this Court's prior
6   Order, Petitioner has established the absence of injunctive relief would result in irreparable harm
7   and the balance of equities and public interest weigh in her favor.

Finally, Respondents request the Court hold its ruling on the merits in abeyance pending the Ninth Circuit's decision regarding the appeal in *Rodriguez Vazquez v. Bostock*, 779 F.Supp.3d 1239 (W.D. Wash. 2025). (ECF No. 13 at 10.) The Court denies this request. As discussed in this Court's prior Order and reincorporated here, the Court finds Petitioner is likely to succeed on the merits of her claim and the Court will not delay issuing a preliminary injunctive on the prospective chance a pending appeal could change this outcome.

### IV.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. Respondents are ENJOINED AND RESTRAINED from imposing additional restrictions on Petitioner's terms of release, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

2. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation/custody hearing before a neutral decisionmaker, where the Government shall bear the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk, and Petitioner shall be allowed to have her counsel present.

3. Within ten (10) days of the date of this Order, the parties shall file a joint status report addressing the parties' plan to proceed with this action. The joint status report should address, at minimum, whether the conditions of Petitioner's release comply with this Court's Order, whether parties anticipate any motions practice, or whether parties believe

1 | the habeas petition is moot.
2 | IT IS SO ORDERED.
3 | Date: January 6, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE